UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOANNE CAROL CAMPBELL,

                        Plaintiff,

v.                                              5:16-CV-0272
                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

MEGGESTO, CROSSETT LAW FIRM                     KIMBERLY SLIMBAUGH, ESQ.
  Counsel for Plaintiff
313 East Willow St.
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                     ARIELLA ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 12.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Joanne Carol

Campbell ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1969. (T. 115.) She completed high school. (T. 308.)

Generally, Plaintiff's alleged disability consists of fibromyalgia, back injury, and

depression. (T. 304.) Her alleged disability onset date is August 25, 2004. (T. 275.)

Her date last insured is December 31, 2007. (*Id.*) She previously worked as a certified

nursing assistant ("CNA") and quality control manager. (T. 305, 866.)

### B.    Procedural History

On November 21, 2008, Plaintiff applied for a period of Disability Insurance

Benefits ("SSD") under Title II. (T. 275.) Plaintiff's application was initially denied, after

which she timely requested a hearing before an Administrative Law Judge ("the ALJ").

On April 7, 2010, Plaintiff appeared before the ALJ, Deborah Mittleman. (T. 78-114.)

On May 13, 2010, ALJ Mittleman issued a written decision finding Plaintiff not disabled

under the Social Security Act. (T. 116-129.) On June 18, 2011, the Appeals Council

("AC") granted Plaintiff's request for review and remanded the case for further

proceedings. (T. 133-136.) On February 27, 2012, ALJ Elizabeth Koennecke held a

hearing. (T. 43-77.) On March 20, 2012, ALJ Koennecke issues an unfavorable

decision. (T. 22-37.) On March 20, 2013, the AC denied Plaintiff's request for review.

(T. 1-4.) Plaintiff filed a civil action in the District Court for the Northern District of New

York, and on January 6, 2015, the Court remanded the case for a new hearing and

decision. (T. 801-836.) On April 8, 2015, the AC issued an Order remanding the case for further proceedings. (T. 833-836.) On October 14, 2015, Plaintiff appeared before ALJ Koennecke. (T. 743-770.) On November 17, 2015, ALJ Koennecke issued a written decision finding Plaintiff not disabled. (T. 712-735.) The ALJ's November 17, 2015 decision became the final decision of the Commissioner when Plaintiff did not file written exceptions and the AC did not initiate its own review. *See* 20 C.F.R. 416.1484(b)-(d) (2012). Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's 2015 Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 719-735.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2007 and Plaintiff had not engaged in substantial gainful activity since August 25, 2004. (T. 719-720.) Second, the ALJ found that Plaintiff had the severe impairment of "a chronic pain syndrome variously characterized including as fibromyalgia and a somatoform disorder." (T. 720.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 726.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (*Id.*)[1] Specifically, the ALJ determined that Plaintiff could, during the course of an eight hour workday, lift/carry 10 pounds; stand and walk for a total of six hours; and sit for a total of six hours if permitted to alternate between sitting

---

[1]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2012).

and standing every thirty minutes.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 732-735.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes six separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly rejected the opinion of her treating physician and arrived at an improper RFC.  (Dkt. No. 9 at 8-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's RFC was not supported by substantial evidence.  (*Id.* at 14-15.)  Third, Plaintiff argues the ALJ failed to properly assess Plaintiff's credibility.  (*Id.* at 15-18.)  Fourth, Plaintiff argues the ALJ erred in finding Plaintiff's migraine headaches were not a severe impairment.  (*Id.* at 18-19.)  Fifth, Plaintiff argues the RFC provided by the ALJ to the vocational expert ("VE") was flawed. (*Id.* at 19.)  Sixth, Plaintiff argues there was substantial evidence to support a finding of disability.  (*Id.* at 20.)

### B.    Defendant's Arguments

In response, Defendant makes five arguments.  First, Defendant argues the ALJ properly weighed the medical opinion evidence and her RFC finding was supported by substantial evidence.  (Dkt. No. 11 at 5-11 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's credibility analysis was supported by substantial evidence.  (*Id.* at 11-14.)  Third, Defendant argues the ALJ considered Plaintiff's migraine headaches throughout the sequential process.  (*Id.* at 14-15.)  Fourth, Defendant argues the ALJ's

step five finding was supported by substantial evidence.  (*Id.* at 15-16.)  Fifth, and lastly, Defendant argues remand for calculation of benefits is not warranted.  (*Id.* at 16.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520 (2012). The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

## A.     The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c) (2012).  The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a) (2012).

The Second Circuit has held that where an ALJ finds that a plaintiff has a severe impairment and proceeds to the subsequent steps of the sequential evaluation, any error at step two is harmless.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (error in finding plaintiff's impairment severe was harmless because the ALJ proceeded with plaintiff's claim).

Plaintiff argues that the ALJ erred in her step two determination finding Plaintiff's migraine headaches non-severe.  (Dkt. No. 9 at 18-19 [Pl.'s Mem. of Law].)

As an initial matter, it is unclear from the ALJ's 2015 decision whether or not she determined that Plaintiff's migraines were a severe impairment.  The ALJ appears to initially classify Plaintiff's migraines as severe, but then ultimately determined the impairment was non-severe.  (T. 720-722.)  The 2015 determination lists Plaintiff's

severe impairment as: "chronic pain syndrome variously characterized including as fibromyalgia and a somatoform disorder." (T. 720.) However, the ALJ then states:

> [t]he documented medical evidence of record, which consists of clinical and diagnostic findings, is persuasive and supports a conclusion that [Plaintiff's] fibromyalgia (however denominated), migraine headaches, and chronic obstructive pulmonary disease caused significant limitation in her ability to perform basic work activities through her date last insured of December 31, 2007. Accordingly, the undersigned finds that [Plaintiff's] has established *these three impairments to be severe* for the purposes of the Regulations during the period concluding with the date last insured.

(T. 720) (emphasis added). Based on this initial statement it appears that the ALJ concluded Plaintiff's fibromyalgia, migraines, and chronic obstructive pulmonary disease ("COPD") to be severe impairments. This statement is also, almost word for word, used in the 2012 decision. (T. 26.)[2] However, the ALJ subsequently concluded in her 2015 step two determination that Plaintiff's migraines did not "rise to the level of [a] severe impairment[]." (T. 722.) In 2015 the ALJ also specifically concluded that Plaintiff's COPD was not a severe impairment. (*Id.*) Therefore, despite the initial paragraph in the 2015 decision, in which the ALJ indicated that Plaintiff's migraines and COPD were severe impairments, it appears from the detailed discussion in the remainder of the 2015 decision that the ALJ ultimately concluded those impairments were not severe.

Any error the ALJ may have made in finding Plaintiff's migraines non-severe was harmless. The ALJ found Plaintiff had a severe impairment at two step and proceeded with Plaintiff's claim. Further, the ALJ discussed Plaintiff's migraines in her step four

---

[2] In 2012 the ALJ determined that "[t]he documented medical evidence of record, which consists of clinical and diagnostic findings, is persuasive and supports a conclusion that [Plaintiff's] fibromyalgia, migraine headaches, and chronic obstructive pulmonary disease caused significant limitation in her ability to perform basic work activities through her date last insured of December 31, 2007. Accordingly, the undersigned finds that [Plaintiff] has established *these three impairments to be severe* for the purposed of the Regulations during this period of time." (T. 26) (emphasis added).

analysis.  (T. 727.)  Therefore, because the ALJ found other impairments severe at step two and proceeded with the sequential process any error the ALJ may have made at step two was harmless.  It is recommended that the ALJ's step two determination be upheld.

### B.  Treating Physician Paul Fiacco, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2) (2012); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. § 404.1527(c)(2)(i)-(iv) (2012).  The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

On April 6, 2010, Dr. Fiacco signed a form titled "Fibromyalgia Residual Functional Capacity Questionnaire."  (T. 587-592.)  According to the questionnaire, Plaintiff could perform the following functional activities in an eight hour workday: sit for one hour at a time and stand for one hour at a time; sit for a total of two hours; stand/walk for less than two hours; and occasionally lift up to ten pounds.  (T. 590-591.)

The questionnaire also indicated that Plaintiff required a job that would permit shifting positions at will and she would take unscheduled breaks. (T. 590.)

In a letter dated September 27, 2011, the ALJ requested that Dr. Fiacco clarify his April 2010 statement and include an objective medical assessment of Plaintiff's functioning with reference to documentation in treatment notations. (T. 241.)

In a fax dated October 12, 2011, Dr. Fiacco signed a statement indicating that he reviewed Plaintiff's file and the limitations expressed in the April 6, 2010 questionnaire remained the same. (T. 671.) Dr. Fiacco wrote "for your information, forms were filled out in my office by my nursing staff. However, I reviewed the forms [and] concurred with the information when I signed the forms." (*Id.*)

In a letter dated January 3, 2012, Dr. Fiacco outlined Plaintiff's treatment history with his office, testing, and medication. (T. 672.) He indicated that the questions in the 2010 questionnaire were subjective and therefore were presented to Plaintiff and her answers were recorded. (T. 673.) Dr. Fiacco stated that fibromyalgia was a "subjective diagnosis" and that there were "no objective findings [that could] be provided to the courts to substantiate [Plaintiff's] complaints." (*Id.*) The ALJ afforded Dr. Fiacco's April 2010 opinion "little weight." (T. 728.)

Plaintiff argues that the severity of Plaintiff's fibromyalgia symptoms outlined in the April 2010 questionnaire cannot, by their very nature, be supported by objective medical evidence; and therefore, the ALJ erred in relying on a perceived lack of objective evidence in analyzing the doctor's opinion and affording it little weight. (Dkt. No. 9 at 11-14 [Pl.'s Mem. of Law].)

Denying a fibromyalgia plaintiff's claim of disability based on a perceived lack of objective evidence is reversible error. *See Grenier v. Colvin,* No. 13-CV-484, 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014). Similarly, discrediting treating source medical opinions and subjective testimony concerning limiting effects of fibromyalgia simply because such evidence is not corroborated by objective medical evidence beyond what is needed for a diagnosis is error. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). It is also true that a treating source may take into account a plaintiff's subjective complaints in formulating a diagnosis and medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool.").

Thus, absence of medically-acceptable clinical and laboratory diagnostic findings, beyond clinical signs and symptoms necessary for a diagnosis, is a legally-improper basis for rejecting medical source opinion. Conversely, reliance on subjective complaints in fibromyalgia cases hardly undermines medical opinion as to functional limitations it produces because patients' reports of complaints and histories are essential diagnostic tools. *Campbell v. Colvin*, No. 13-CV-451, 2015 WL 73763, at *11 (N.D.N.Y. Jan. 6, 2015) (citing *Green-Younger*, 335 F.3d at 107).

Courts have not hesitated to remand cases involving a fibromyalgia plaintiff in which the ALJ declined to afford a treating physician's opinion proper weight where the ALJ solely reasoned that the opinion was inconsistent with, or not supported by, objective medical evidence. *See Mnich v. Colvin*, No. 14-CV-740, 2015 WL 7769236, at *17 (N.D.N.Y. Sept. 8, 2015), *report and recommendation adopted,* No. 14-CV-740,

2015 WL 7776924 (N.D.N.Y. Dec. 2, 2015) (remanding where the ALJ found that plaintiff's fibromyalgia was a severe condition but discredited the treating source's findings addressing the limiting effects of plaintiff's fibromyalgia for a lack of objective findings); *see also Wood-Callipari v. Comm'r of Soc. Sec.*, No. 15-CV-743, 2016 WL 3629132, at *4 (N.D.N.Y. June 29, 2016) (remanding where the ALJ's focus throughout her decision was the lack of objective evidence); *see also Fuller v. Comm'r of Soc. Sec.,* No. 14-CV-0472, 2015 WL 5512383, at *10 (N.D.N.Y. Sept. 16, 2015) (remanding where the ALJ completely reject the treating physician's functional limitations solely because they were based upon subjective complaints).

Indeed, this Court previously remanded Plaintiff's case, in part, because the ALJ relied solely on a preserved lack of objective medical evidence in affording Dr. Fiacco's opinion weight. *Campbell,* 2015 WL 73763, at *11 ("ALJ Koennecke erred when discrediting Dr. Fiacco's medical opinion and [Plaintiff's] subjective evidence for a perceived lack of objective corroborating evidence.").

However, the Second Circuit has held that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 Fed. App'x 20, 22 (2d Cir. 2008); *see also Prince v. Astrue*, 514 F. App'x 18 (2d Cir. 2013). Therefore, while courts recognize that fibromyalgia is "a disease that eludes [objective] measurement," *Green–Younger,* 335 F.3d at 108, a diagnosis of fibromyalgia does not mandate a finding of disability, *see id.* at 104 (physician diagnosing fibromyalgia stated that the condition "in certain instances can be debilitating").

Moreover, with respect to pain, the Second Circuit has explained that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir. 1983). Unlike the record in *Green–Younger,* which demonstrated that the plaintiff was diagnosed with "severe" fibromyalgia resulting in marked limitations in her daily living activities, *id.* at 104, the record in this case does not demonstrate that Plaintiff's fibromyalgia rose to the level of markedly limiting her functionality. *See Rivers,* 280 Fed. Appx. at 22; *see also Wetherby v. Astrue*, No. 08-CV-165, 2009 WL 9054919, at *8 (D. Vt. Mar. 16, 2009).

The decision in *Green-Younger* does not stand for the principle that a fibromyalgia plaintiff's subjective complaints of pain, or a treating physician's opinion of a fibromyalgia plaintiff's limitations, must be accepted without question. In *Green-Younger* the ALJ erred in affording the treating physician less than controlling weight because the ALJ essentially required objective evidence "beyond the clinical findings necessary for a diagnosis of fibromyalgia under the established medical guidelines." *Green-Younger,* 335 F.3d at 106. Further, the Court in *Green-Younger* concluded that, contrary to the ALJ's findings, the limitations imposed by the treating physician were supported by clinical signs and symptoms and were not inconsistent with other substantial evidence in the record. *Id.* at 108. Therefore, although the ALJ in *Green-Younger* erred in his evaluation of the treating physician's opinion because he required objective medical evidence "beyond" what was needed for a diagnosis, the Court nonetheless looked to the remainder of the record and determined that the opinion was

supported by clinical signs and symptoms and the opinion was not inconsistent with any substantial evidence.

In sum, rejecting a treating source's opinion regarding the functional limitations of a fibromyalgia plaintiff based only on a perceived lack of objective evidence, or requiring medical evidence beyond that needed for a diagnosis, can be legal error. However, the opinion of a treating physician on the nature or severity of a plaintiff's impairments is binding only if it is supported by medical evidence and not contradicted by substantial evidence in the record. *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008); *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Here, the ALJ did not err in affording Dr. Fiacco's April 2010 statement little weight, because the ALJ concluded that the opinion was not supported by other medical evidence in the record and contradicted by substantial evidence. In her 2015 decision, the ALJ reassessed Dr. Fiacco's opinion according to the remand order and the direction of this Court. The ALJ provided a more thorough analysis, did not solely rely on a perceived lack of objective evidence, and took into consideration the opinion of medical examiner Charles M. Plotz, M.D.

First, the ALJ afforded less than controlling weight to Dr. Fiacco's questionnaire because it only documented Plaintiff's subjective statements about what she could and could not do and therefore, as stated by the ALJ, lacked "the medical analysis that would entitle the opinion more weight." (T. 729); *see Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (ALJ did not err in affording less than controlling weight to treating source statement where the opinion was "no more than a doctor's recording of Polynice's own reports of pain"). The ALJ attempted to obtain a medical analysis from

Dr. Fiacco. (T. 241.) Dr. Fiacco's January 2012 response reiterated the difficult nature of a fibromyalgia diagnosis and that it was difficult to determine a "degree of disability." (T. 673.) Therefore, the ALJ concluded that because the April 2010 statement, and subsequent letter, failed to provide a medical analysis the statement was not an objective medical opinion. (T. 728-729.)

Second, the ALJ concluded that Dr. Fiacco's opinion was inconsistent with other evidence in the record. Unlike in her 2012 decision, here the ALJ supported her conclusion, citing to the opinion of medical expert Dr. Plotz. (T. 729-731.)[3] Dr. Plotz did not examine Plaintiff; however, he reviewed the medical evidence in the record prior to the 2015 hearing. Dr. Plotz ultimately opined that Plaintiff did not have fibromyalgia, but a somatoform disorder. (T. 763.)[4] The ALJ asked Dr. Plotz if Plaintiff was capable of lifting and carrying ten pounds maximum, less than ten pounds frequently, standing and walking for six hours, and sitting for six hours with the ability to alternate positions. (T. 754-755.) Dr. Plotz responded that Plaintiff could "easily accomplish" those demands and stated that in his opinion Plaintiff could perform the requirements of light or even medium work. (T. 755.)

Lastly, the ALJ noted that the functional limitations outlined in the April 2010 statement were inconsistent with Plaintiff's reported activities elsewhere in the record. (T. 731.) The ALJ noted that Plaintiff testified that she took her children out, picked

---

[3]     "ALJ Koennecke expressed another reason for discounting Dr. Fiacco's opinion, stating that it was inconsistent with the other substantial evidence in the record. ALJ Koennecke, however, fails to cite to any other evidence of record with which it conflicts." *Campbell,* 2015 WL 73763, at *12 (N.D.N.Y. Jan. 6, 2015).

[4]     Although Dr. Plotz opined that based on his review of the medical record Plaintiff did not suffer from fibromyalgia under on the updated America College of Rheumatology guidelines (T. 756), the ALJ stated during the hearing that she would nonetheless find that Plaintiff suffered from a severe impairment involving chronic pain (T. 762).

them up from school, attended her son's sporting functions, visited with family and friends, and attended church. (T. 731, *referring to* T. 59-64, 89, 92.) Therefore, the ALJ reasonably concluded that the functional limitations described in the questionnaire were inconsistent with other evidence in the record.

Of note, Plaintiff argues that the ALJ erred in her assessment of Dr. Fiacco's statement because the ALJ's decision was "silent upon the factors required in evaluating the treating source's opinion." (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) However, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Here, the ALJ acknowledged Dr. Fiacco as Plaintiff's primary care physician, summarized his treatment notations, and thoroughly discuss the April 2010 questionnaire. (T. 721, 727-729.) The ALJ properly analyzed Dr. Fiacco's opinion, as discussed herein. Therefore, the ALJ did not commit legal error in her evaluation of Dr. Fiacco's opinion. Although the ALJ did not explicitly go through each factor in 20 C.F.R. § 404.1527(c), her reasoning and adherence to the Regulations was clear.

Plaintiff also alleges that had the ALJ properly acknowledged that Dr. Fiacco reviewed medical records from Patrick Riccardi, M.D., his opinion would have "presumably been given deference." (Dkt. No. 9 at 12-13 [Pl.'s Mem. of Law].) Dr. Fiacco stated in his January 2012 letter that he reviewed medical records from Dr.

Riccardi, a rheumatologist, who treated Plaintiff's fibromyalgia. (T. 672.) Dr. Fiacco stated that he had records from Dr. Riccardi indicating that Plaintiff's fibromyalgia was "chronic and occurred sometime around 1998." (T. 673-674.) The ALJ stated that "[i]f such records from Dr. Riccardi exist, they are not in evidence." (T. 728.)

To be sure, the record contains treatment notations from Dr. Riccardi. (T. 461-464.) In a letter from Dr. Riccardi, addressed to Dr. Fiacco, he stated "[Plaintiff] is a 40 year old female who has been bothered by chronic pain, suggestive of fibromyalgia, since approximately 1998." (T. 463.) Either the ALJ was unaware that the record contained Dr. Riccardi's treatment records (indeed, she does not mention them elsewhere in her decision) or the ALJ was specifically referring to records from 1998 establishing a diagnosis of fibromyalgia. (T. 728.) Either way, any error was harmless.

First, the ALJ did not commit *per se* legal error in failing to discuss Dr. Riccardi's records. "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10-CV-1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Second, "[w]here discussion of an omitted medical report would not have changed the outcome of the ALJ's decision, such omission constitutes harmless error." *Dombrowski v. Astrue*, No. 12-CV-638, 2013 WL 528456, at *3 (N.D.N.Y. Feb. 11, 2013) (internal citations omitted).

The treatment records provided by Dr. Riccardi contain essentially three treatment notations from 2009. (T. 461-464.) Dr. Riccardi indicated that he first treated Plaintiff on August 31, 2009. (T. 463.) He summarized Plaintiff's medications,

symptoms, and conducted a physical examination.  (T. 463-464.)  Dr. Riccardi noted "quite a bit of soft tissue tenderness over both forearms, especially the lateral epicondyles, and both shoulder girdle, especially the trapezius areas."  (T. 464.)  He agreed with a diagnosis of fibromyalgia and prescribed her a trial course of Cymbalta and recommended heat and massage therapy.  (*Id.*)  He further encouraged Plaintiff to relax, do low-impact exercise on "a regular basis," and do water therapy.  (*Id.*)  On October 5, 2009, Plaintiff was examined by a nurse practitioner with Dr. Riccardi's office.  (T. 462.)  Treatment notes indicated that Plaintiff continued to have pain and increased fatigue.  (*Id.*)  On December 7, 2009, Plaintiff was seen by Dr. Riccardi.  (T. 461.)  He recommended that Plaintiff continue with her current treatment, but increased her Cymbalta dose.  (*Id.*)  Dr. Riccardi's treatment notations confirm Plaintiff's diagnoses of fibromyalgia, which the ALJ found to be a severe impairment.  Further, Dr. Riccardi's notations do not contain any functional limitations or opinions that are inconsistent with the ALJ's ultimate RFC determination.  Therefore, if the ALJ overlooked Dr. Riccardi's records, any error would be harmless, because nothing in the notations was contradictory to the ALJ's ultimate findings.

In sum, contrary to Plaintiff's contention, the ALJ did not reject Dr. Fiacco's April 2010 statement based on a perceived lack of objective medical evidence.  The ALJ ultimately concluded that limitations imposed in the 2010 statement were Plaintiff's subjective complaints and, although affirmed by Dr. Fiacco, were not supported by the medical evidence in the record and inconsistent with the record in whole.  Therefore, the ALJ did not err in her evaluation of Dr. Fiacco's opinion and it is recommended that the ALJ's weight determination be upheld.

## C.     The ALJ's RFC Determination

Plaintiff's RFC is "the most [Plaintiff] can still do despite [her] limitations."  20

C.F.R. § 404.1645(a)(1) (2012).

Plaintiff argues that the ALJ's RFC determination was flawed because it relied on

an improper weighing of the medical opinion evidence.  (Dkt. No. 9 at 14-15 [Pl.'s Mem.

of Law].)  For the reasons outlined herein, the ALJ properly assessed Dr. Fiacco's April

2010 statement.  Further, the ALJ's RFC determination was supported by the medical

opinion evidence of Dr. Plotz.  Although Dr. Plotz did not personally examine Plaintiff,

he did review the medical evidence in the record.  It is well settled that an ALJ is entitled

to rely upon the opinions of both examining and non-examining State agency medical

consultants, since such consultants are deemed to be qualified experts in the field of

social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2)

(2012); *see Henry v. Astrue*, 32 F. Supp. 3d 170, 181-182 (N.D.N.Y. 2012); *see also*

*Leach ex rel. Murray v. Barnhart,* No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan.

22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical

issues in disability claims. As such, their opinions may constitute substantial evidence if

they are consistent with the record as a whole.").

Plaintiff argues that the ALJ erred in relying on Dr. Plotz's testimony because he

did not consider whether Plaintiff met the applicable criteria for diagnosing fibromyalgia.

(Dkt. No. 9 at 9-11, 13 [Pl.'s Mem. of Law].)  Although Dr. Plotz opined that Plaintiff did

not have fibromyalgia, he did opine that Plaintiff had a chronic pain disorder.  (T. 761,

765-766.)  Therefore, regardless of what specific pain disorder Plaintiff suffered from,

Dr. Plotz acknowledged that she had a pain disorder.

Therefore, the ALJ did not err in her reliance on Dr. Plotz's testimony in formulating her RFC determination and it is recommended that the ALJ's RFC determination be upheld.

### D. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529 (2012). First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at § 404.1529(a) (2012). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii) (2012).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, her statements concerning the intensity, persistence, and limiting effects of her symptoms prior to December 31, 2007 were not fully credible.  (T. 730.)

Plaintiff argues that the ALJ erred in her credibility analysis because the ALJ failed to consider the consistency of Plaintiff's testimony and the ALJ fundamentally misstated Plaintiff's activities of daily living.  (Dkt. No. 9 at 15-18 [Pl.'s Mem. of Law].)

The ALJ properly assessed Plaintiff's credibility and substantial evidence supported her determination.  In assessing her activities of daily living, the ALJ noted that Plaintiff reported taking her children out, picking them up from school, attending her son's baseball games, visiting her sister and a friend, engaging in activities with her children and attended church.  (T. 731, *referring to* T. 89-93.)  Plaintiff testified that she could do her own self-care, could help her children get ready for school, prepare meals, take care of paperwork, go to appointments, and do housework.  (T. 59.)  Plaintiff

indicated that she needed a break in the afternoon for about two hours. (T. 59-60.) The ALJ properly noted that these statements were inconsistent with Plaintiff's claims that she could only sit and stand for one hour per day. (T. 731); *Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.")

In addition, the ALJ also considered Plaintiff's prior work history and noted that she had not demonstrated long-term full time work activity which detracted from her credibility. (T. 731); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("Just as a good work history may be deemed probative of credibility, poor work history may prove probative as well."). Elsewhere in her determination the ALJ acknowledged that Plaintiff was taking "a variety" of medications for her impairments and the ALJ outlined Plaintiff's various medical treatments. (T. 727); 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (2012). Overall, the ALJ's credibility determination was made in accordance with the Regulations and supported by substantial evidence. Therefore, it is recommended that the ALJ's credibility determination be upheld.

### E. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. §§ 404.1520(f), 416.920(f) (2012); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986).

Here, the ALJ relied on vocational expert ("VE") testimony obtained at the 2012 hearing to conclude that jobs existed in significant number in the national economy that Plaintiff could perform, and thereby concluded that Plaintiff was not disabled. (T. 732, *referring to* T. 68-69.) At the hearing in 2012 the ALJ obtained testimony from a VE to determine whether jobs existed in the national economy for an individual with Plaintiff's vocational profile and RFC. (T. 68-69, 733-734.)[5] The VE testified that such an individual could perform the requirements of work as a telephone solicitor, information clerk, and order filler. (T. 68-69.)

Plaintiff argues that the ALJ's hypothetical questions to the VE were premised on an inadequate RFC assessment. (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

---

[5] The ALJ determined in 2012 and 2015 that Plaintiff had the RFC to: lift/carry 10 pounds; stand and walk for a total of six hours; and sit for a total of six hours if permitted to alternate between sitting and standing every thirty minutes. (T. 31, 726.)

Plaintiff further argues that she is disabled and that remand for calculation of benefits is warranted. (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].) However, for the reasons provided herein, and further outlined in Defendant's brief, remand is not recommended because the ALJ's determination was supported by substantial evidence in the record. Therefore, remand for calculation of benefits is not warranted.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      April 14, 2017

William B. Mitchell Carter
U.S. Magistrate Judge